# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

| | |
|---|---|
| ROSE LANGLEY, o/b/o D.A.S., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 1:17-cv-00869-SGC |
| ) | |
| SOCIAL SECURITY ) | |
| ADMINSITRATION, Commissioner, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM OPINION**[1]

Plaintiff Rose Langley, on behalf of her minor child, D.A.S., appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying an application for Child's Supplemental Security Income. (Doc. 1). Plaintiff timely pursued and exhausted available administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. 42 U.S.C. § 405(g). For the reasons stated below, the Commissioner's decision is due to be reversed and remanded.

## I.   FACTS, FRAMEWORK, AND PROCEDURAL HISTORY

D.A.S. was four years old at the time the application was filed; he was five at the time of the Administrative Law Judge's ("ALJ's") decision. (*See* R. 25, 37). Plaintiff contends her son was born disabled on May 23, 2010, primarily due to

---

[1] The parties have consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). (Doc. 11).

glaucoma and blindness in the right eye. (*See* R. 163). During the hearing, Plaintiff contended both eyes were at issue, together with intellectual impairments. (R. 44, 46). Also during the hearing, the ALJ effectively amended the disability onset date to June 23, 2014, the date the application was filed. (*See* R. 25, 50-51).[2]

When evaluating the disability of a child, the regulations prescribe a three-step sequential evaluation process. *See* 20 C.F.R. § 416.924(a). The first step requires a determination of whether the child is "doing substantial gainful activity." *Id*. If he or she is, then the child is not disabled and the evaluation stops. *Id*. If the child is not engaged in substantial gainful activity, the second step requires the ALJ to determine whether he or she suffers from a severe impairment or combination of impairments. *Id*. An impairment is considered "severe" if it causes more than "minimal functional limitations." 20 C.F.R. § 416.924(c). If the impairments are not severe, the analysis stops. 20 C.F.R. § 416.924(a). However, if the impairments are "severe," the third step requires the ALJ to determine if one or more of the impairments meets or equals an impairment listed in Appendix 1 to Subpart P of Part 404. *Id*. If the child has such an impairment which meets the durational requirement, the ALJ will find the child is disabled. *Id*. If the child does not meet each of the criteria enumerated in the listings, the ALJ must decide

---

[2] This is not Plaintiff's first application for benefits on behalf of D.A.S. The Commissioner denied a previous application, which was affirmed by a court sitting in this district. *Langley v. Colvin*, No. 13-1374-CLS (N.D. Ala. *closed* May 30, 2014).

whether the impairment or combination of impairments "functionally equals" the severity of any listed impairment. *See* 20 C.F.R. § 416.924(d).

When assessing a child's functional limitations, the ALJ considers all of the relevant factors, such as: how well the child can initiate and sustain activities, how much extra help he or she requires, the effects of structures or supportive settings, how the child functions in school, and the effects of medications or other treatments on the child's health. 20 C.F.R. § 416.926a. To determine functional equivalence, the ALJ must evaluate the child's limitations in the following six functional areas, called domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) the ability to care for himself; and (6) health and physical well-being. *See* 20 C.F.R. § 416.926a(b)(1)(i-vi). An impairment, or combination of impairments, functionally equals a listed impairment if it results in either "marked" limitations in two domains or an "extreme" limitation in one domain.[3] *See* 20 C.F.R. § 416.926a(a).

Applying the sequential evaluation process, the ALJ found D.A.S. had not engaged in substantial gainful activity since the date of the application. (R. 25). At step two, the ALJ found D.A.S. suffered from the following severe

---

[3] For purposes of deciding the overall limitation in the six functional domains, a "marked" limitation is one that "interferes seriously with [the] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). An "extreme" limitation is one that "interferes very seriously" with the claimant's abilities. 20 C.F.R. § 416.926a(e)(3)(i).

3

impairments: (1) congenital glaucoma; (2) status post shunt placement and penetrating keratoplasty on the right; (3) Axenfeld-Rieger Syndrome in the right eye; and (4) dense amblyopia in the right eye. (R. 25). Nonetheless, the ALJ determined at step three that these impairments, whether considered singularly or in combination, did not meet or medically equal any listed impairment. (*Id.*). The ALJ found D.A.S. suffered from "less than marked limitation" in the domains of: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; and (5) the ability to care for himself. (R. 27-34). The ALJ found D.A.S. suffered from marked limitation in the domain of health and physical well-being. (R. 34-36). The ALJ concluded by finding D.A.S. had not been disabled since June 23, 2014, the date the application was filed. (R. 36-37).

## II. STANDARD OF REVIEW

A court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). A court gives deference to the factual findings of the Commissioner, provided those findings are

4

supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, a court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if a court finds the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III. DISCUSSION

The undersigned finds no error with the ALJ's conclusion that D.A.S. did not meet or medically equal a listed impairment. However, the ALJ's analysis of D.A.S.'s functional equivalence and treatment of Plaintiff's pain testimony applied incorrect legal standards and are not supported by substantial evidence.

### A. Meeting or Medically Equaling a Listing

A plaintiff is disabled if his impairments meet or equal a listed impairment. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d). To meet a listing, the plaintiff must "have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement." *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002) (citing 20 C.F.R. § 404.1525(a)-(d)). "To 'equal' a Listing, the medical findings must be 'at least equal in severity and duration to the listed findings.'" *Id.* (quoting 20 C.F.R. § 404.1526(a)). "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see also Wilkinson v. Bowen*, 847 F.2d 660, 662 (11th Cir.1987) (claimant must "present specific medical findings that meet various tests" to meet a listing). Finally, the Court has an "absolute duty" to consider a combination of impairments in order to determine whether there is

medical equivalency to a listing if it is defined in terms of functional criteria. *Davis v. Shalala*, 985 F.2d 528, 533-34 (11th Cir.1993).

Here, Plaintiff contends D.A.S.'s impairments meet or medically equal three Listings: (1) 112.05D Intellectual Disability; (2) 112.11 Neurodevelopmental Disorders; and (3) 102.00 Special Senses and Speech. (Doc. 15 at 10-14). The ALJ found D.A.S. did not meet Listing 102.02 but did not specifically address the other listings Plaintiff contends apply. (R. 25). As explained below, the ALJ's conclusion D.A.S. did not meet or medically equal a listed impairment was appropriate under the governing standard.

### 1. Listing 112.05: Intellectual Disability

The version of Listing 112.05 in effect at the time of the ALJ's decision described intellectual disability as "[c]haracterized by significantly subaverage general intellectual functioning with deficits in adaptive functioning." 20 C.F.R. § Pt. 404, Subpt. P, App. 1. Subsection D, which Plaintiff contends applies to D.A.S., required a claimant to show a "valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant limitation of function." *Id.* Here, the record includes the results of the Wechsler Preschool and Primary Scale of Intelligence III, indicating D.A.S.'s full scale IQ fell within the range of 85-90. (R. 282). The ALJ cited this IQ testing

in concluding the D.A.S. was not intellectually disabled. (R. 25). Accordingly, D.A.S. does not meet Listing 112.05D.

### 2. Listing 112.11: Neurodevelopmental Disorders

Next, Plaintiff contends D.A.S. met Listing 112.11. (Doc. 15 at 12-13). However, Plaintiff's contention regarding this listing is entirely conclusory and does not include any argument or cite to any evidence. (*Id.*). Moreover, the examples of disorders "in this category include specific leaning disorders, borderline intellectual functioning, and tic disorders (such as Tourette syndrome)." (Doc. 15 at 12) (citing Listing 112.11). The record does not indicate D.A.S. suffers from these or similar disorders. Accordingly, D.A.S. does not meet Listing 112.11.

### 3. Listing 102.00: Special Senses and Speech

Finally, Plaintiff contends D.A.S. meets Listing 102.00. (Doc. 15 at 13-14). Listing 102.00 includes impairments involving the loss of senses, including three visual impairments. 20 C.F.R. § Pt. 404, Subpt. P, App. 1. Plaintiff does not point to the visual impairment she contends D.A.S. satisfies and merely cites to the listing's introductory language. (Doc. 15 at 13). Instead, Plaintiff lists D.A.S.'s diagnoses, medical treatments, and symptoms and points to evidence that D.A.S. often requires assistance with school work, does not know the alphabet or numbers, and does not recognize lower-case letters. (*Id.* at 13-14). Accordingly,

Plaintiff contends the record shows D.A.S. satisfies the criteria in the introductory language of Listing 102.00. (*Id.* at 14).

The ALJ considered Listing 102.02, which covers loss of central visual acuity. (R. 25). Listing 102.02 requires: (1) the vision in the least impaired eye to be less than 20/200; or (2) the inability to participate in visual acuity testing. 20 C.F.R. § Pt. 404, Subpt. P, App. 1. While D.A.S. has little to no vision in his right eye, visual testing of his left eye revealed 20/20 in distant vision acuity and 20/25 in near vision acuity. (R. 279, 284). Additionally, the record belies any claim D.A.S. could not participate in visual acuity testing. Accordingly, substantial evidence supports the ALJ's conclusion that D.A.S. did not meet Listing 102.02. (R. 25). Plaintiff does not present any argument regarding how D.A.S. met any of the other visual impairments described in Listing 102.00 and the record does not support Plaintiff's conclusory argument that D.A.S. met any of these listings.

### B. <u>Functional Equivalence and Testimony of Pain</u>

To determine whether a child's impairments are the functional equivalent of a listing, the ALJ considers the child's functioning in six domains. 20 C.F.R. § 416.926a. To functionally equal a listing, the child's limitations must be marked in two domains or extreme in one domain. *Id.* Here, Plaintiff contends D.A.S. suffered marked or severe limitations in four domains. (Doc. 15 at 14-15).

Before addressing the impact of D.A.S's impairments on the domains of functioning, the ALJ summarized the testimony and the evidence in the record. As to testimony, the ALJ noted the testimony of Plaintiff, D.A.S.'s mother. At the hearing she testified D.A.S.: (1) suffers from a number of visual impairments, primarily in his right eye; (2) cannot see out of his right eye, causing him to tilt his head to the left and turn objects sideways in order to see them; and (3) has undergone cornea transplant and shunt placement surgery. (R. 26). Plaintiff testified vision impairments impact D.A.S. by: (1) making him extremely light sensitive and requiring him to wear prescription sunglasses when outside; (2) causing right eye pain, swelling, and protrusion; (3) requiring him to wear a patch on his right eye for three to four hours per day to strengthen the left eye; (4) prohibiting him from playing sports due to the danger of displacing the shunt; (5) causing shyness and lack of confidence; (6) preventing him from interacting normally with other children or teachers; and (7) causing him to be the last to complete tasks because he fears ridicule. (R. 26-27). The ALJ also noted Plaintiff's testimony that D.A.S.'s intellectual development is slow and that he cannot recite the alphabet or count to ten. Plaintiff also testified D.A.S. does not play with other children due to fear of ridicule or inquiry about his eye. (R. 27).

The ALJ also summarized D.A.S.'s impairments and medical treatment. (R. 27). As to impairments, the ALJ noted D.A.S. was diagnosed with congenital

glaucoma, Axenfeld-Rieger Syndrome, and dense amblyopia in the right eye. (*Id.*). As to treatment, the ALJ noted D.A.S. underwent a March 2012 keratoplasty with shunt placement in the right eye. (*Id*). During an August 2012 follow-up, D.A.S. was noted to be "healing well" with sutures in place. (*Id.*). During a February 2014 follow-up, Dr. Christopher Girkin—D.A.S.'s treating ophthalmologist—noted D.A.S. had missed several appointments and had a history of poor compliance regarding wearing the eyepatch. (*Id.*). During the appointment, D.A.S. complained of eye pain, and Dr. Girkin noted several loose sutures, which were removed the following month. (*Id.*). During the subsequent follow-up, Dr. Girkin again noted D.A.S.'s noncompliance with instructions to wear the eyepatch. (*Id.*). At that point, D.A.S. had visual acuity of 20/30 in the left eye. (*Id.*).

The ALJ also noted: (1) July and August 2015 visual testing revealing 20/20 near vision acuity and 20/25 distant vision acuity in the left eye; and (2) September 2015 examination of both eyes under anesthesia revealing glaucoma in both eyes. (R. 27). The examination revealed no defects in the left eye but severe glaucomatous cupping in the right eye. (*Id.*). As a result of the examination, D.A.S.'s medication dosages were changed. (*Id.*). In performing the functional equivalence analysis, the ALJ also discussed diagnositic testing and opinion evidence provided by D.A.S.'s teachers. R. (28-36).

While much of the ALJ's analysis of D.A.S.'s functional equivalence finds support in the record, the decision is flawed in its treatment of two interrelated topics: (1) it ignores Plaintiff's testimony regarding pain; and (2) it improperly found Plaintiff's testimony regarding D.A.S.'s other limitations was not credible. Each issue is discussed in turn.

### 1. Plaintiff's Testimony Regarding Pain

Social Security Ruling 09-1p analyzes whether impairments limit a child's activities such that they are functionally equivalent to a listing. 2009 WL 396031. This technique, referred to as the "whole child approach" considers "actual functioning in all settings" in order to "account[] for all of the effects of a child's impairments singly and in combination—the interactive and cumulative effects of the impairments." *Id.* at *1-*2. The ruling specifically notes pain may affect multiple functions, including concentration, which would be relevant in the domain of attending and completing tasks. *Id.* at *4.

During the hearing, Plaintiff testified D.A.S. experiences pain due to the shunt, which causes his right eye to swell and protrude. (R. 65). The record includes the treatment note created during the February 2014 visit to Dr. Girkin noting eye pain, extreme light sensitivity, and that it was "very difficult to check" the eye. (R. 253). The record also includes counsel's post-hearing brief which notes D.A.S. suffers from "random yet frequent pain in both eyes." (R. 237).

The ALJ's only references to pain appear in the recitation of: (1) D.A.S.'s medical history, which summarizes Dr. Girkin's February 2014 treatment note; and (2) Plaintiff's testimony. (R. 26-27). While the ALJ discusses other aspects of Plaintiff's testimony regarding D.A.S.'s impairments, absent from the decision is any analysis of her testimony regarding D.A.S.'s eye pain. (R. 36). Neither does the decision consider evidence regarding pain in evaluating D.A.S.'s limitations in the domains of functioning.

The Eleventh Circuit has held "an ALJ must 'state specifically the weight accorded each item of evidence and the reasons for his decision.'" *Osborn v. Barnhart*, 194 F. App'x 654, 666 (11th Cir. 2006) (internal citations omitted) (citing *Gibson v. Heckler,* 779 F.2d 619, 623 (11th Cir.1986)). "The testimony of family members is evidence of a claimant's subjective feelings of pain." *Id.* (citing *Tieniber v. Heckler,* 720 F.2d 1251, 1253 (11th Cir.1983)). Courts sitting in this district have reversed decisions which ignored parental testimony regarding a child's condition. *See Matthews v. Barnhart*, 339 F. Supp. 2d 1286, 1293 (N.D. Ala. 2004) (reversing Commissioner's decision based on mother's testimony and noting "[i]nformation from parents and caregivers can be important sources of information because they usually see the person every day"); *see also Shinn v. Comm'r of Soc. Sec.*, 391 F.3d 1276, 1286 (11th Cir. 2004) (reversing district court's affirmance due to ALJ's failure to consider testimony of claimant's mother).

Here, the ALJ's decision is due to be reversed and remanded because it did not account for Plaintiff's testimony regarding D.A.S.'s pain or assess the impact of pain on the domains of functioning.

## 2. Credibility of Plaintiff's Other Testimony

The ALJ did address one aspect of Plaintiff's testimony when analyzing D.A.S.'s functioning in the domain of health and physical well-being: that D.A.S. did not interact with others. (R. 36). The ALJ gave less weight to Plaintiff's testimony in this regard for a number of reasons: (1) inconsistency with the teacher and special education evaluations; (2) "a demonstrated history of noncompliance with treatment which may have impacted the claimant's functioning;" and (3) failure to attend a consultative examination ("C.E."). (*Id.*). Among the examples of non-compliance cited by the ALJ was Dr. Girkin's February 2014 treatment note indicating D.A.S. had missed previous appointments. (R. 36; *see* R. 27 (noting D.A.S. had "missed several appointments")). Although not acknowledged in the ALJ's decision, the treatment note in question noted D.A.S. had "transportation issues." (R. 253).

Where compliance with a prescribed course of treatment is at issue, the ALJ has a duty to investigate the reasons for noncompliance. *Lucas v. Sullivan*, 918 F.2d 1567, 1572-73 (11th Cir. 1990). In order to draw a negative inference from noncompliance, an ALJ must inquire whether there is a reasonable explanation.

14

*Grier v. Colvin*, 117 F. Supp. 3d 1335, 1344 (N.D. Ala. 2015). "Poverty excuses noncompliance with prescribed treatment." *Davis v. Astrue¸* 478 F. Supp. 2d 1342, 1349 (N.D. Ala. 2007) (citing *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988)).

Here, the ALJ did not investigate any potential reasons D.A.S. may have missed appointments with Dr. Girkin. (R. 36). Plaintiff contends that, due to financial hardships, she could not arrange transportation from her home in Talladega County to Dr. Girkin's office in Birmingham. (Doc. 18 at 9). The record does not speak directly to Plaintiff's financial condition but does note D.A.S. "currently gets food stamps." (R. 141).[4] Accordingly, the record supports Plaintiff's argument that she had a reasonable explanation excusing the missed appointment with Dr. Girkin. In any event, the ALJ's failure to explore the existence of legitimate reasons Plaintiff missed appointments or failed to comply with other treatment is reversible error. *See Grier*, 117 F. Supp. 3d at 1344.

Finally, to the extent the ALJ relied on D.A.S.'s failure to appear for the C.E., the record reflects D.A.S. did not attend; Plaintiff contended a proper examination would require anesthesia, which is "outside the scope of consultative examinations." (R. 36; *see* R. 78). The ALJ disagreed without explanation. (R. 36). The record also reflects Plaintiff did not return calls or respond to letters

---

[4] For what it's worth, the undersigned granted Plaintiff indigent status in this matter. (Doc. 4).

regarding the C.E. (R. 78). The ALJ concluded this conduct undermined Plaintiff's testimony regarding the severity of D.A.S.'s condition and limitations. (R. 36). Again, the only testimony the ALJ discussed was Plaintiff's statement that D.A.S. "did not interact with others." (*Id.*). How the failure to appear for the C.E. undermined this testimony, much less the unexamined testimony regarding pain, is unclear.[5]

For the foregoing reasons, the ALJ's credibility determination regarding Plaintiff's testimony warrants remand.

## IV. CONCLUSION

Upon review of the administrative record and the briefs of the parties, the court finds the Commissioner's decision is not supported by substantial evidence and did not apply the correct legal standards. Accordingly, the Commissioner's decision is due to be reversed and remanded for further consideration. A separate order will be entered.

**DONE** this 9th day of October, 2018.

*/s/ Staci G. Cornelius*
STACI G. CORNELIUS
U.S. MAGISTRATE JUDGE

---

[5] It is worth noting that the record ultimately included examinations of both eyes, completed under anesthesia in September 2015 and revealing glaucoma bilaterally. (*See* R. 27).